McMILLAN *v.* FARMERS' BONDED WAREHOUSE.

Opinion delivered June 15, 1925.

1. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—A verdict based upon conflicting evidence is conclusive upon appeal.

2. WAREHOUSEMEN—LIABILITY OF BONDSMAN—Since it is unlawful under Crawford & Moses' Digest, § 10420, for a warehouse to do business without a certified warehouseman in charge, a warehouseman's bond, specifying no particular term, will be limited to a term during which a certificate was granted, and will not extend beyond that period, though the warehouseman continued in charge without a certificate.

3. WAREHOUSEMEN—LIABILITY OF BONDSMEN.—Sureties on a warehouseman's bond held not liable for the value of cotton in warehouseman's hands, which was lost or misappropriated after the bond expired.

4. WAREHOUSEMEN—LIABILITY FOR LOSS OF GOODS.—A warehouseman is liable for his negligence or misconduct in losing or misappropriating cotton stored in the warehouse after his certificate of qualification had expired, though the sureties on his bond were not liable therefor.

Appeal from Polk Circuit Court; *B. E. Isbell,* Judge; reversed in part.

*Pipkin & Frederick,* for appellant.

*Norwood & Alley,* for appellee.

McCULLOCH, C. J. Appellee was organized as a corporation pursuant to statute (Crawford & Moses' Digest, § 10404 *et seq.*) for the purpose of operating a warehouse in the town of Mena. The statute reads as follows:

"Section 10420. Corporations chartered hereunder shall have the right to erect, purchase or lease and operate warehouses, buildings, elevators, storage tanks, silos, and such other places of storage and security as may be necessary for the storage, grading, weighing and classification of cotton, wool, wheat, corn, rice, alfalfa, fruit, silage and other farm, orchard and ranch products, and all weights, grades and classifications shall be made in accordance with the standards of weights, grades and classifications prescribed by law and by the Board of

Supervisors.   Before such corporation shall be permitted to open its doors for business, and, in order for it to continue to transact business, the officer or employee in active management of its warehouse must have a certificate from the Board of Supervisors of Warehouses as a certified warehouseman.   In order to receive such certificate, such person must present satisfactory evidence to the board that he is competent to discharge the duties of such position, the kind and character of evidence to be presented to the board to be stated by the board in the rules promulgated by it for such purpose.   Upon satisfactory evidence, the board shall issue a certificate showing that such applicant is a certified warehouseman. Provided, however, that the life of any such certificate shall be one year, at the expiration of which time the applicant must obtain a new certificate.''

A charter was granted to appellee a short time prior to January 1, 1921—the exact date not appearing in the record—and Ode McMillan, one of the appellants, was employed by the corporation as warehouseman to manage the business. McMillan obtained a certificate in accordance with the provisions of the section just quoted above and entered upon the discharge of his duties.   He executed to appellee a bond with his co-appellants as sureties thereon, which said bond reads as follows:

''Know all men by these presents:   That Ode McMillan, as principal, and W. B. McMillan, G. A. Liles, D. E. Little and J. W. McMillan, as sureties, are firmly bound to the Farmers' Bonded Warehouse of Mena, Arkansas, in the penal sum of one thousand dollars, lawful money of the United States of America, for the payment of which well and truly to be made we do jointly and severally bind ourselves, our legal representatives, successors, heirs and assigns, firmly by these presents.   The conditions of this obligation are such that whereas the said Ode McMillan has been selected as warehouseman by the said Farmers' Warehouse of Mena, Arkansas, now, if the said Ode McMillan shall faithfully perform

all duties required of him by law as such warehouseman and shall faithfully account to said corporation for all moneys and other valuables passing through his hands as such warehouseman and a true account render of all business done by him in such capacity, then this obligation shall be null and void; otherwise to be in full force and effect.''

This action was instituted by appellee against appellant, Ode McMillan, and the sureties on his bond to recover certain items of loss aggregating $1,060.27, alleged to have been sustained by reason of default of McMillan as such warehouseman.   The damage consisted of loss or wilful misappropriation by McMillan of a number of bales of cotton delivered to the warehouse by customers of appellee.   The case was tried before a jury, and the verdict was in favor of appellee for the recovery of the full amount of the bond, $1,000.

The evidence is undisputed that the cotton in question was delivered to the warehouse in the fall of 1921, during the lifetime of the certificate of qualification held by McMillan, but that the loss occurred several months after the expiration of that certificate.   It is undisputed that McMillan's certificate was never renewed; however, he continued in the employment of appellee until the summer or fall of 1921.   There is a conflict in the testimony as to whether or not the contract of employment was limited to the duration of McMillan's certificate, or whether it was an indefinite employment.   He was first employed at a salary of $75 per month, and later the salary was raised to $100 a month, and still later, after the expiration of his certificate, the salary was reduced to $25 per month, and he was only to give a portion of his time to the operation of the business, being permitted to operate a garage in another portion of the town.   McMillan testified that in each instance there was a new and separate contract made with him, whereas witness for appellee testified that the contract was never renewed, but that the salary under the original contract was raised

or lowered at different times. There is also a conflict as to whether or not appellant was negligent in allowing the cotton to be lost, or whether he wilfully misappropriated it. These issues of fact were submitted to the jury under appropriate instructions, and the conflicts in the testimony must be treated as having been settled by the verdict.

The principal contention here by counsel for appellants is that the sureties are not liable for the reason that the bond was limited to the term of legal service of McMillan as warehouseman under his certificate, and that the loss did not occur until after the expiration of his certificate. Counsel for appellee contend, on the other hand, that the contract and bond covered an indefinite period of service, and that, even though the term has ended, appellant was liable for the loss of cotton which came into his hands during the lifetime of his certificate.

The statute is very plain that the corporation cannot operate its business unless "the officer or employee in active management of its warehouse" has a certificate from the Board of Supervisors of Warehouses. It plainly provides that the certificate shall only last for one year and must be renewed before the operation of the business can be continued. Another section of the statute makes a violation of any provision of the act a misdemeanor punishable by fine or imprisonment, or both. The statute does not require that the warehouseman shall give a bond, though it is required that the corporation, before obtaining its charter, shall give a surety bond. It will be observed that the bond given by McMillan specifies no particular term, but merely provides that the principal "shall faithfully perform all duties required of him by law as such warehouseman and shall faithfully account to said corporation for all moneys and other valuables passing through his hands as such warehouseman and a true account render of all business done by him in such capacity." It being unlawful for the warehouse to do business without having a certified ware-

houseman in charge, it must be conclusively presumed that the bond was given to cover a valid term of service. Of course, in the absence of a statute expressly providing for a bond and its terms and conditions, the parties could have made a common-law bond which would bind the sureties for any term or period or length of time specified therein with reasonable certainty. But here we have a bond which contains no specific provision with reference to time, and therefore it must be conclusively presumed that the parties intended to contract for a valid period of service, which was merely during the lifetime of the certificate. Learned counsel for appellee invoke the doctrine that, ordinarily, sureties on a bond can make no defense which could not be made by their principal. 21 R. C. L. 991. This principle is sometimes applicable, but not so to a case where the question is as to the period covered by the terms of the bond. The surety is only bound by the conditions which apply while the bond is in effect.

We are of the opinion, therefore, that the contention of counsel for appellant is correct, and that this bond is limited in its operation to the period covered by McMillan's certificate of qualification whereby he was permitted to legally discharge the duties of warehouseman. To extend the obligation of sureties beyond that period would be to make a contract which is not expressed in the face of the bond.

It is also contended by counsel for appellee that, notwithstanding the fact that the bond was in effect only during the period of the lifetime of the certificate, the sureties are responsible for the value of the cotton that came into the hands of the warehouseman during the lifetime of the bond, even though the loss thereof occurred after the expiration of the bond. 21 R. C. L. 982. The sureties were liable only for default which occurred during the lifetime of the bond, and, if the property was on hand at the time of the expiration of the term of service of the certificate when the bond expired,

then there was no default, even though the property was afterwards lost or wilfully misappropriated.  In other words, if the property was on hand at the time of the expiration of the term of the bond, ready to be accounted for and delivered by the warehouseman, then the liability of the sureties could not be extended by permitting the principal in the bond to remain in possession.  There was no accrued liability for losses during the lifetime of the bond, and liability could not arise from a loss which occurred afterwards.  We are of the opinion, therefore, that the undisputed evidence shows that the sureties on the bond are not liable.

This does not, however, exonerate McMillan, the principal, from liability for his own negligence or misconduct while he was still in possession of the property of appellee.  This is true, notwithstanding the fact that he was no longer authorized by law to do business for his employer. He was a bailee in charge of the property, and is liable for his own misconduct which caused the loss of the property.  He could not lawfully carry on the business without a certificate, but this did not absolve him from his legal duty as bailee to care for the property and return it to his employer on demand.

All the issues concerning liability of McMillan himself were, we think, properly submitted to the jury, and we find no error in the court's charge.  The evidence was sufficient to sustain the verdict as to the loss of the cotton on account of said appellant's misconduct and also as to the amount which appellee was entitled to recover.

The judgment against appellant Ode McMillan is therefore affirmed, but the judgment against the other appellants as sureties on the bond is reversed, and the cause as to them is dismissd.